IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CHRISTOPHER MARTIN,
      Petitioner,

v.                              CASE NO.  4:16-cv-179-WS-GRJ

SEC'Y, DEP'T
OF CORR.,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a *pro se* petition for a writ of

habeas corpus under 28 U.S.C. § 2254. ECF No. 1. Respondent has filed a

response, along with the relevant state-court record. ECF No. 12. Petitioner

has filed a reply. ECF No. 16. This case is therefore ripe for review. Upon

due consideration of the Petition, the response, the state-court record, and

the reply, the undersigned recommends that the Petition be denied.[1]

### I. State-Court Proceedings

On April 17, 2009, Petitioner was charged by amended information

with burglary of a dwelling with assault (Count One) and lewd and

---

[1] The Court has determined that an evidentiary hearing is not warranted because the
Court may resolve the Petition on the basis of the record. *See* Rule 8, Rules Governing
Habeas Corpus Petitions Under Section 2254.

lascivious molestation (Count Two). ECF No. 12-1 at 28. Petitioner

proceeded to a jury trial.

The state's theory of the case at trial was that Petitioner sneaked into

the bedroom window of a twelve-year-old girl late at night, who was the

child of one of his acquaintances. Petitioner then entered through her

unlocked window and molested her. The child testified that Petitioner was

about to unzip his pants when he heard her mother coming. The child's

mother was awake in the early morning hours, heard a commotion in the

child's room, entered and saw Petitioner leap out of the window and flee.

She immediately called law enforcement.

The child, who was thirteen years old at the time of trial, testified that

Petitioner tapped on her window and called her name. Petitioner was forty-

six years old at the time of the offense. The child admitted that when first

confronted she denied inappropriate contact. Police officers arrived at the

home at 4:56 a.m. and found an unopened condom, beer can, and

cigarette butt inside the child's room, a chair outside underneath the child's

window and an unopened condom on the ground outside the child's

window. Petitioner returned to the home while the police were investigating

and was taken into custody.

The defense theory at trial was that Petitioner went to the house because he had lived with the family in the past and was invited as a friend of the family. When he arrived, he was expecting to find people waiting for him on the front porch but found nobody there. He heard the victim calling him from her window and was only having an innocent conversation with her when her mother found him seated on the child's windowsill and became upset. Petitioner then walked away.

A jury found Petitioner guilty of both counts. *Id.* at 51-52. He was sentenced to thirty years' imprisonment followed by a life term of probation for Count One, and fifteen years' imprisonment for Count Two, to run concurrent with the sentence for Count One, with credit for 317 days of time served. *Id.* at 56-62.

Petitioner, through counsel, filed a motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(b)(2). ECF No. 12-2 at 175-179. The trial court denied the motion, but the court clarified Petitioner was not sentenced to "sex offender probation" but sentenced as a sex offender placed on life probation. *Id.* at 180-81.

Counsel then filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967) because no reversible error occurred in the lower court. ECF

3

No. 12-2 at 238-251. Appellate counsel, however, did ask the court to make a clerical change to Petitioner's judgment to reflect a sentence of regular probation as a sex offender rather than formal sex offender probation. *Id.*

Petitioner filed a *pro se* appellate brief. *Id.* at 255-271. The First DCA *per curiam* affirmed Petitioner's judgment. *Id.* at 273. Petitioner filed a motion for rehearing and rehearing *en banc*, which the First DCA denied. *Id.* at 275-285.

Thereafter, Petitioner filed a *pro se* motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a). *Id.* at 289-92. The court denied the motion because it failed to present a plausible basis for legal relief. The court thereafter denied Petitioner's motion for rehearing. *Id.* at 295, 300. Petitioner then initiated an appeal. *Id.* at 305-315. The First DCA *per curiam* affirmed the denial of the motion. *Id.* at 320, 322.

Petitioner then filed a *pro se* petition for writ of habeas corpus in the First DCA, raising a single ground of ineffective assistance of appellate counsel. *Id.* at 324-35. The First DCA *per curiam* denied the petition. ECF No. 12-3 at 24. Petitioner filed a motion for rehearing which was denied. *Id.* at 26-30, 32.

4

Petitioner filed a second amended *pro se* motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850 raising four grounds of ineffective assistance of counsel. *Id.* at 37-55. The post-conviction court denied ground one and set an evidentiary hearing on the other three grounds. *Id.* at 64-65. Petitioner waived grounds two and three, which the postconviction court confirmed on the record at the evidentiary hearing, and the court denied ground four. *Id.* at 87-89.

Petitioner appealed to the First DCA challenging only the court's denial of ground four. ECF Nos. 12-3 at 90, 12-4 at 24-44. The First DCA *per curiam,* without written opinion, affirmed the trial court's denial of Petitioner's motion. ECF No. 12-4 at 65. Petitioner filed a motion for rehearing, which the First DCA denied. *Id.* at 67-71, 73-75. Petitioner then filed the Petition for federal habeas relief now before the Court on March 18, 2016. ECF No. 1.

## II. Scope of Federal Habeas Review

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion. 28 U.S.C. §§ 2254(b)(1), (c). Exhaustion requires that prisoners give the state

5

courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id.* at 1302, 1306.

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already

adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); *see also* § 2254(e)(1).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions

demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-06 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams*, 529 U.S. at 362). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even

8

require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8 (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652 (2004).

In *Gill*, the Eleventh Circuit clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests. The court acknowledged the well-settled principle that summary affirmances, such as the Florida First District Court of Appeal's in this case, are presumed adjudicated on the merits and warrant deference. 633 F.3d at 1288 (citing *Harrington v. Richter*, 526 U.S. 86 (2011), and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion. *Id*. at 1291 (citing *Harrington*, 131 S. Ct. at 784). Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective

9

reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244-45 (5th Cir. 2002) (summarizing the emerging circuit split)). The Eleventh Circuit concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id.* at 1291. In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result." *Id.*

In light of *Gill,* the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id*. at 1292. A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable. *Gill*, 133 F.3d at 1290.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance

10

was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en

banc). "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A.  And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*. To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.

When the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington*, 562 U.S. at 102. The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28

U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 100 (quotation marks omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fair minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fair minded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated the other way, only if "there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id*.

13

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 788. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

## III. Discussion

### Ground One

In his first ground for relief, Petitioner argues that his trial counsel, Nina Moody, was ineffective for failing to call a private investigator to testify that a phone call occurred between Petitioner and the victim the day of the crime. Petitioner contends the phone call would have shown that the victim invited him over to the house on the day of the crime, meaning he did not enter the victim's home unlawfully. Petitioner says the testimony and evidence of the phone call would have created a reasonable doubt as to the credibility of the victim and her mother because they both testified that

they did not call Petitioner on the day in question. Petitioner asserts there is a reasonable probability the testimony would have resulted in his acquittal. ECF No. 1 at 4-5.

Petitioner presented this claim to the state habeas court, and the court held an evidentiary hearing. At the evidentiary hearing, Ms. Moody testified that she was well aware of the evidence of the telephone calls prior to trial. She testified that as the evidence developed she became concerned that the calls were more harmful than helpful because of the inability to determine who made the calls and whether the calls were from Petitioner's phone or from the victim's house phone. Petitioner testified that the victim called him and invited him to the home. Ms. Moody testified that she was further concerned that the evidence might support an inference that Petitioner called the child rather than the child calling Petitioner. ECF No. 12-3 at 89.

In rejecting Petitioner's claim, the state habeas court concluded that:

counsel made a reasonable tactical decision not to introduce evidence of telephone calls beyond Mr. Martin's testimony. The chance of introducing further evidence of Mr. Martin's planning and preparation in advance of these crimes could have made the evidence even worse for the defense. Given the child's testimony and the other incriminating circumstances, Mr. Martin has failed to demonstrate any reasonable probability that the evidence of telephone calls would have made a difference in the outcome. The

advantage of introducing evidence of telephone calls earlier in the day between Mr. Martin and the child or other family members is speculative.

*Id.* at 89. The First DCA affirmed without written opinion. ECF No. 12-4 at 65. Petitioner fails to demonstrate that the state court's application of the *Strickland* standard was unreasonable. Counsel's decision to exclude evidence of phone calls between Petitioner and the victim was not only a tactical decision but a prudent one.

Counsel could not establish whether the calls came from the victim's home phone or Petitioner's phone. Had defense counsel presented the phone call evidence, the jury may have inferred that it was Petitioner who called the victim on the evening of the crime, which would been detrimental to his defense because it would have appeared that Petitioner was pursuing the victim. However, if instead the jury inferred that it was the victim who called Petitioner and invited him over as Petitioner alleges, although it is possible that the evidence would have aided in defense of the burglary charge, there was a significant risk that it would have harmed Petitioner's defense on the molestation charge. Ms. Moody explained at the evidentiary hearing:

> But I do remember our tactic at the time was that, you know, if the phone call had come from the alleged victim, [Petitioner]

16

accepting the phone call and going over to the alleged victim's house at that time of night, morning, whatever you want to call it, probably would not look good to the jury. So we decided that, you know, as a tactical reason that we were not going to bring that forward.

ECF No. 12-3 at 127. Accordingly, the post-conviction court determined that evidence of the phone calls could have harmed Petitioner either way. Petitioner fails to show counsel acted unreasonably in not admitting evidence of the phone calls or that he was prejudiced thereby. Petitioner therefore cannot show counsel was ineffective under *Strickland*.

Because Petitioner has not shown counsel was ineffective, nothing Petitioner has presented demonstrates that the state court's rejection of this ineffective assistance claim was contrary to or an unreasonable application of federal law. Accordingly, Ground One is without merit.

### **Grounds Two and Four**

In Ground Two, Petitioner argues that trial counsel was ineffective for failing to investigate and pursue a defense theory that the victim's mother coached the victim to say Petitioner molested her. Petitioner contends that the victim initially did not report the molestation to police, but later told police that Petitioner had touched her. Petitioner also contends the victim's statements were inconsistent. Petitioner argues that counsel failed to

investigate the victim's inconsistent statements and whether the victim was coached. Petitioner says that an investigation would have provided exculpatory evidence. ECF No. 1 at 7-8.

In Ground Four, Petitioner contends that counsel was ineffective for failing to utilize material that would have impeached the victim's testimony. Petitioner argues that the victim gave inconsistent accounts in her deposition, first saying she started to talk to Petitioner while he was outside of her window, then saying Petitioner opened the window. Petitioner alleges that if counsel had used the deposition to impeach the victim, then the jury would have had a reasonable doubt about the victim's credibility and believed his testimony. ECF No. 1 at 14-16.

Although Petitioner presented these claims as Issues Two and Three in his second amended Rule 3.850 motion for post-conviction relief he waived them on the record at the evidentiary hearing. ECF No. 12-3 at 37-48. While Petitioner now concedes the claims are unexhausted and procedurally defaulted, he still argues he is entitled to review because of

the exception to the procedural default doctrine under *Martinez v. Ryan*, 566 U.S. 1 (2012).[2]

In *Martinez* the Supreme Court held that an Arizona prisoner seeking federal habeas relief could overcome the procedural default of a trial-level ineffective-assistance-of-counsel claim by showing that the claim is substantial and that state habeas counsel was also ineffective in failing to raise the claim in a state habeas proceeding. *Ayestas v. Davis,* 138 S. Ct. 1080, 1087 (2018), citing *Martinez*, 566 U.S. at 14.

Petitioner contends that he satisfies the *Martinez* exception because postconviction counsel misadvised him to waive these claims. A petitioner seeking to satisfy the *Martinez* exception must show "more than the mere fact they failed to raise potentially meritorious claims; he must show that *no competent counsel*, in the exercise of reasonable professional judgment, would have omitted those claims." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1263 (11th Cir. 2014) (emphasis in original). Additionally, *"The*

---

[2] Petitioner only appears to assert that the *Martinez* exception applies to Ground Four. However, Petitioner concedes all claims are unexhausted, and asserts post-conviction counsel misadvised him to waive the above-mentioned claims. ECF Nos. 1 at 9, 12, 16; 16 at 2. The Court therefore liberally construes the Petition to assert that the *Martinez* exception applies to grounds Two and Four.

petitioner bears the burden of demonstrating that the underlying ineffective-assistance claim that he seeks to raise is a substantial one—that is, that it has 'some merit'—before the procedural default can be excused." *Safford v. State*, No. 17-11619-G, 2017 WL 8890105, at *2 (11th Cir. Nov. 1, 2017).

At the evidentiary hearing, postconviction counsel explained to the court that after researching issues Two and Three and speaking at length with Petitioner, he suggested that Petitioner abandon these claims of ineffective assistance of trial counsel. ECF No. 12-3 at 105. Postconviction counsel explained that he had ample time to discuss the decision with Petitioner and that Petitioner understood the *Strickland* standard and agreed to waive the claims. *Id.*

Postconviction counsel concluded that the claims were not worthy of pursuing because of the difficulty satisfying the prejudice standard as well as the fact that counsel's decision not to take this course was "clearly tactical or trial strategy decisions that . . . we can all sit back and cherry-pick after the fact." ECF No. 12-3 at 105. Postconviction counsel said he could not in good faith say that trial counsel's strategy fell below the *Strickland* standard. *Id.* at 106. The Court then placed Petitioner under oath and conducted a brief colloquy in which Petitioner confirmed he agreed to

20

waive the claim. *Id.* Petitioner does not show the decision to waive the argument was anything other than a strategic decision to focus on the claim postconviction counsel believed was most likely to prevail. *See Jones v. Barnes*, 463 U.S. 745, 753-54 (1983) (Counsel need not raise every nonfrivolous claim, rather focus on claims likely to prevail).

Moreover, Petitioner fails to demonstrate that the underlying claim of ineffective assistance of trial counsel has some merit. And notably, as discussed above, Petitioner under oath agreed to waive this claim after consulting with postconviction counsel and concluding that trial counsel's decision was the result of a sound trial strategy. ECF No. 12-3 at 106-107. Petitioner cannot now argue trial counsel was deficient.

Because Petitioner fails to demonstrate postconviction counsel was ineffective and that his underlying claim of ineffective assistance of trial counsel is substantial, the *Martinez* exception does not apply to Petitioner's procedurally defaulted claim. Accordingly, Petitioner is not entitled to federal habeas relief on Ground Two.

### **Ground Three**

In Ground Three, Petitioner argues trial counsel was ineffective for failing to request a jury instruction that the jury could have found him guilty

21

of a combination of two lesser included offenses—trespass and battery. Petitioner contends that if the two lesser included offenses had not been separated on the jury instructions, jurors would not have found him guilty of burglary. ECF No. 1 at 10-11.

Petitioner presented this claim as issue One of his postconviction motion. ECF No. 12-3 at 39. The court denied the claim on the merits. *Id.* at 64. Respondent argues Petitioner's claim is unexhausted because he failed to appeal the denial of this claim to the state court of appeals.

Exhaustion in Florida state courts requires a petitioner not only to file a Rule 3.850 motion, but also to file an appeal of the denial of the motion. *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979). Petitioner did not appeal the denial of this claim to the First DCA.

His sole issue on appeal was whether the habeas court erred in denying his claim raised in Issue Four–that trial counsel rendered ineffective assistance in failing to introduce evidence of phone calls between Petitioner and the victim. ECF No. 12-4 at 24-44. Petitioner was required to raise and fully address the merits of this claim in his appellate brief, which Petitioner failed to do. *See Watson v. State*, 975 So. 2d 572, 573 (Fla. 1st DCA 2008); *Cook v. State*, 638 So.2d 134, 135 (Fla. 1st DCA

22

2008). Therefore, Petitioner's claim is unexhausted and now procedurally defaulted.

A procedurally defaulted claim like Petitioner's can support federal habeas review in only two narrow situations. First, the petitioner may show cause and prejudice for the default. *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008). Cause must be external to the petitioner. *Id.* To show prejudice, the petitioner must show there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

Second, the petitioner may show that enforcing the procedural default would result in a fundamental miscarriage of justice. *Mize*, 532 F.3d at 1190. To show a fundamental miscarriage of justice, the petitioner must show that in light of new evidence, no reasonable juror would have convicted him. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner offers no support to show cause and prejudice for his procedural default or a fundamental miscarriage of justice. Petitioner's procedural default is not excused.

Moreover, notwithstanding that the claim is procedurally defaulted, Petitioner's Ground Three fails on the merits. The state habeas court, relying on *Sanders v. State*, 946 So. 2d 953 (Fla. 2006), summarily denied Petitioner's claim on the merits because he failed to establish prejudice under *Strickland*. In *Sanders*, the Florida Supreme Court held that under *Strickland*, a defendant cannot, as a matter of law, demonstrate prejudice by relying on the possibility of a jury pardon by convicting the defendant of a lesser offense. *Id.* at 956. This Court cannot say that the First DCA unreasonably applied *Strickland* in concluding that defense counsel's failure to request jury instructions on the lesser-included offenses did not prejudice Petitioner's defense *See Santiago v. Sec'y, Fla. Dep't of Corr.*, 472 F. App'x 888, 888-89 (11th Cir. 2012)[1] (citing *Sanders*, 946 So. 2d at 958).

In his reply, Petitioner argues the state habeas court's decision was contrary to decisions of the United States Supreme Court. ECF No. 16 at 9. While Petitioner cites to several Supreme Court decisions on lesser included offenses, none of the cases consider whether counsel was ineffective for failing to request a lesser included offense. Petitioner's reply

---

[1] Unpublished opinion cited for persuasive authority.

therefore does not establish an excuse for his procedural default. Ground Three is procedurally barred and meritless.

## V. Conclusion

Upon a review of the record and the state court's disposition of Petitioner's claims, and mindful of the high degree of deference that is afforded to the state court's assessment of Petitioner's claims, the Court concludes that Petitioner has presented no basis for federal habeas relief because Petitioner's claims are either procedurally barred or without merit.

## VI. Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S.

473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## VII. Recommendation

Accordingly, it is respectfully **RECOMMENDED:**

1. The petition for writ of habeas corpus under 28 U.S.C. § 2254, ECF No. 1, should be **DENIED**.

2. A certificate of appealability should be **DENIED.**

**IN CHAMBERS** this 11th day of February 2019.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations**

26

as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.